Good morning, ladies and gentlemen. Our first case for argument this morning is Patel v. Zillow. Ms. Anderson. Good morning. Thank you for the opportunity. I'd first like to address the standard. I don't believe there's any issue in terms of the standard of review for the case and the dismissal of the complaint, or the amended complaint. I do believe that the trial court erred in a number of legal questions below. And beginning with the IRELA count, there's really two bases for the dismissal. One is I believe the trial court erred in interpreting the exception to IRELA. The exception to what? IRELA. Could you perhaps use English words? I'm sorry, Your Honor. Use English? Oh, yes. English words. We're not specialists. Okay. My apologies, Your Honor. The Illinois Real Estate Appraisal Licensing Act. Specifically in the exception, I believe that the trial court erred in not considering, number one, the burden that should have been on Zillow, and two, that there was an improper interpretation of the exception. This is a licensing statute that very clearly prohibits the unlicensed practice of real estate appraisals, and there are limited exceptions, C through G, which are applicable here. And they're category by category, and they're separated by periods. The trial court found that exception G, the comma in that exception, allowed automated valuation methodology to apply to entities other than lending institutions. I believe that's incorrect as a matter of statutory construction. Counsel, how do we consider any of this, given the lack of a private right of action in the statute? Well, that is the second legal argument that the trial court based its dismissal on, and I believe that was incorrect. Number one, I believe it's a form of a substance. One question is whether this has even been preserved for our review. Boy, that was a big throng in there. Your adversary says you never even argued in the district court that there was a private right of action. I certainly did, Your Honor. I argued in the brief that because this is real estate that there was an implied cause of action. And the trial court in its ruling Could you refer us to where you made this argument in the district court? Your Honor, I did not bring my pleading with me. However, it is in the LAC taxicab decision from out of state. I'd have to go through you through me, Your Honor. We did not argue Fisher below because Fisher was never presented in the motion to dismiss. That was raised for the first time by the trial court in its dismissal. I never had an opportunity in the motion to dismiss to go through the factors. And, Your Honor, as you're aware One reason why I ask this is because your adversary says it was never raised in the district court. And I then look to your reply brief to see your response. You don't respond. Yes, I do. You don't say where you raised it in the district court. In the district court, I raised it by discussing Doodle Top. I discussed Black and White Corporation versus Groom Transportation. And I discussed it in Longs Baggage Transfer Company. I did not discuss it in the context of the Fisher decision Because I was never given the Fisher decision to address by Zillow. The Fisher decision came from the trial court. Tell you what, when you get off her rebuttal, I would appreciate it if you would point us to where this was raised in the district court. Your Honor, I did not bring my briefs with me today. I've read you the cases where it is cited in the docket in my response to the motion to dismiss. Those three cases were specifically discussed. You've come to the Court of Appeals for oral argument and didn't bother to bring your own briefs. Your Honor, I apologize. All right, continue. I've cited the cases that were in the docket. Your Honor, back to the discussion about the exception. Your Honor, I believe Your Honor has discretion to hear all legal issues on a motion to dismiss at this level. It's your discretion to entertain that, including both sides. And I've raised a waiver argument relative to them. The bottom line is that this is a form over substance position that I'm in. Zillow has not addressed that even if we don't have standing under IRELA, we certainly have standing under what? I'm sorry, Illinois Real Estate Licensing Appraisal Act. That we have standing under the Illinois Consumer Fraud Act and the Illinois Trade Deceptive Practices Act. And so really, I think that this is a form over substance argument. The question is not whether we should be reversed. I believe the legal question is what count we should go back to. And that is an interpretation for Your Honors. In other words, if Your Honors find that we can bring our claims under the Illinois Consumer Fraud Act or the Deceptive Trade Practices Act, there really is no reason to reach the question under the criminal statute. However, if you do find that we do not have a private cause of action, then it's necessary to reach that question. I feel like we're dealing with form over substance repeatedly, including the First Amendment argument that Zillow throws in its pleadings. Really, that was the focus of the motion to dismiss below.  I believe the trial court erred in interpreting the exception. There was no discussion of real estate below. There was no discussion of USPAP below. There was no discussion of what? USPAP, the standards for the appraisal statute. Could you please use English words rather than random collections of capital letters? I apologize, Your Honor. There was no discussion of the real estate principles and the real estate standards that apply to appraisers below. We were given a series of legal arguments and not actually asked to address them. How does that bear upon the question, though, of the interpretation of the statute? Because, Your Honor, it's relevant. It says, nor does this act apply to the procurement of an automated valuation model. Right. How is it that the district court committed legal error in interpreting that against you? In terms of the trial court focused on the comma. There was no evaluation, first of all, whether this was a clear statutory provision versus ambiguous. And as to the latter, there certainly was no legislative history to interpret the interpretation by Zillow and or the trial court. I read the district court opinion to say that the statute was clear. The district court judge just read the statute and said it doesn't afford the meaning that you ascribe to it. Well, it was interesting, Your Honor, and I disagree, obviously. I disagree that it's clear. I believe, actually, it's clear in the way I'm interpreting it. There are C, D, E, F, and G exceptions. Each are categories of certain groups of people and entities that do not have to comply with the licensing. And the common theme is that these are entities that are using appraisals for internal purposes only. And the appraisal statute and standards would not allow public dissemination of appraisals. So, in other words, the trial court, what she was doing, was opening up an exception to lending institutions in terms of their internal underwriting and expanding it to beyond lending institutions. She disregarded the fact that C, D, E, F, and G were all separated by periods. And really, her interpretation did not make sense. Specifically, if the statute wanted to have AVMs, automated valuation methodology, apply to entities outside of lending institutions, you would have seen a section H. The comma, in plain context of grammar, would show you that it separated the same thought. In other words, the comma is referring to lending institutions engaging in that conduct. It's not expanding it to non-lending institutions. And that makes sense under USPAP because, excuse me again, Your Honor, the standards for appraisers, because again, lending institutions would be bound by confidentiality, and they would not be allowed to give those output information to the public. There's confidentiality, there's competency standards that go behind it. The exception is limited to internal underwriting purposes. Moreover, it doesn't make sense because this is allowing non-licensed persons to do what licensed persons cannot do. A licensed appraiser cannot go on the Internet and publish output information or anything that requires subjective analysis of real estate valuations.  Moreover, the comma, I noted when I was preparing, I haven't been here in a number of years, and I noted as I was preparing my brief in your section on the color of briefs, I noticed in that section it said, appellant's color, semicolon, etc. And very clearly, this Court understands the difference in the comma and the semicolon in the period. And if we were to believe Zillow, for example, the reply brief, it says reply brief comma gray. If we were to believe Zillow, then all of the briefs should be gray. Clearly, this exception is for lending institutions, is my point. It does not follow that people should be given the permission to use this methodology beyond the context of internal uses only. The argument rests upon a premise or an assumption, does it not, that what Zillow is doing is offering appraisals. That's correct, and I don't even believe that they challenge that. In fact, they basically say that it's an opinion of value. So our point is, whether you go under the Real Estate Licensing Act or the Deceptive Trade Practices Act or the Consumer Fraud Act, in any situation, it's prohibited. And the standing argument of us having standing under the Real Estate Licensing Act really becomes a moot point because we still have the right to bring the same grievance under the different statutes. And there was no challenge, by the way, to the legal discussion about that. The other point that I think that the trial court did not note in her ruling is under the Deceptive Trade Practices that Zillow describes itself two different ways. Zillow describes itself to the public media, including while this case was pending, as very reliable, has a low error rate, and basically then diminishes appraisers who are licensed. That in itself is our position as a deceptive act because in that situation, they're saying to you, well, all we're doing is fortune telling. All it is is puffery. We have a disclaimer. Well, that when you put into juxtaposition of the fact that they say something very different to the public media and to people who are not familiar with appraisal standards, you put those two together, the disclaimer does not rule the day. The disclaimer then becomes whether it's effective, and there's a factual issue, which is not the proper subject of a motion to dismiss. We never had the opportunity to show these media clips where they talk about how reliable they are and how trivial our grievances are. And while they're telling this court so that they can ask for affirmation of the dismissal, you're telling your honor, well, it's really just a small detail. It's not a small detail. They're telling unsophisticated members of the public that they're going to take over the appraisal industry, even though they're not licensed, even though they have no basis in appraisal standards, even under their advisory opinion 18, which was never addressed at the trial court level. Even had we had that discussion, you can see that they're not complying. That is a standard for appraisers. They never discussed the fact that, wait a second, what we're doing is not simply giving output information to a private entity. They're putting it all over the Internet. And then they're saying that despite the fact that no appraiser would ever do that, well, that's okay, the disclaimer saves us. Well, I don't see that. I don't believe that is a credible argument to make. They're on Wharton School of Business discussing how they're going to take over the appraisal industry and how appraisers are seedy individuals. Well, that's not a good faith argument. If they really believe that some appraiser was seedy, they would go to the Illinois Department of Professional Regulation and they would report them. So what they're doing is they're diminishing licensed people, they're talking about their low standard of error, and then they're coming to this court and saying, well, don't pay attention to what we said to the public media. The problem is that's who are the people who are buying our homes. Those people are listening to them saying we're the neutral parties here, and they're not. They have a financial incentive to lower the value of my home. Why? Because if I call that customer service number, I'm going to go nowhere. And where do I have to go as a homeowner who can't go anywhere? You were focusing a moment ago on the Deceptive Trade Practices Act. Right. To state a claim under that statute, don't you have to show that the defendant or allege the defendant made a false or misleading representation of fact? Well, and we discussed how, Your Honor, how the valuations of opinion can come to that level in terms of being specific. And one of the videos I pointed out to you in the brief was the fact that they went on to, I think it was GeekWire. And on GeekWire, they said we purposely didn't give you a range of values. So instead of, for example, my home, let's say my home was, let's say I bought my home for $300,000. Instead of saying the range of value was $250,000 to $320,000, they tell GeekWire they purposely didn't do that. And they say that, I think their expression is they're poking you in the nose. Why are they poking me in the nose? Because that range would have given me some latitude to explain to my potential buyer, hey, don't listen to that number. You know, that's just, these people don't know what they're doing. They're not appraisers. Instead, they poke me in the nose, and let's say they said it was worth $270,000. I call their customer service. I go nowhere. What's my next place to go? I then have to go to a broker. Well, there's a financial incentive for Zillow for me to go to their broker. Their brokers are paying them the advertising dollars that keep Zillow in business. So in this context, and I give you the citations, that an opinion can become a fact issue if there's specificity. And here, they say, for example, my home. They would say, well, $270,000 is the value of a home. That is very specific. That is a valuation. It's a specific valuation. And it is my position that that brings you into the deceptive trade practices. The other point is, in terms of the consumer fraud statute and the deceptive trade practice statute, is this whole FSBO, which is for sale by owner, concept. And in this situation, what they do is they put a suspect listing on your home so that you go and you put your house for sale, for sale by owner, you're going to go nowhere. They're going to put FSBO, for sale by owner, suspect listing. From a pragmatic perspective, as this court is to take in part relative to the claims, how effective is that for sale by owner person going to be in selling their home? What is suspect about someone selling for sale by owner?  I could put my home for sale by owner. What makes that suspect? It's our position that that is a ploy to funnel us to the brokers, that we're going to go nowhere putting our home for sale by owner. And, in fact, in one of their videos, they brag about the fact that the rate of for sale by owner is diminishing. So it's my position, with an entity like Zillow, the for sale by owner concept is going to be, this is going to be the death note. You will never be able to pragmatically sell your home with a suspect listing on your property. You will be forced, which is exactly what Zillow wants you to do, to retain a broker. So whether your honors allow this under the Illinois Real Estate Appraisal Licensing Statute, and, again, I believe that the court erred in terms of us having standing, and I'd ask your honor to consider our implied standing arguments today in addition to the cases I told you that were cited below. Aside from that, I do believe that we have every right to bring it as a private cause of action, that the fact that it's unlawful under one statute does not suddenly make it lawful under private causes of action. The same conduct would be unlawful if this court accepts the argument that the trial court erred in interpreting the exception. Then the question of standing is irrelevant and immaterial to the consumer fraud and the deceptive trade practices count because there is no standing bar to those claims. So in sum, I'd ask your honors to consider how they describe themselves as being deceptive and this estimate and their practices relative to this estimate, including the fact that they disregard any licensed opinions or challenges. I'd ask that you find that there are questions of fact and that we are entitled to go back to the trial court, have this reversed, and have those issues raised and the questions of fact addressed appropriately, not through motions to dismiss. Thank you for your time. Thank you, counsel. Mr. Branfenbrenner. Good morning, your honors. May it please the court, Eric Branfenbrenner for the Zillow Defendant's Appellees. Both orders issued by Judge St. Eve in this case should be affirmed. The district court correctly held that plaintiffs had not pled their state statutory claims. Plaintiffs are for homeowners trying to use these three Illinois statutes to restrict or eliminate or alter the material that Zillow puts out on its website for free. Zillow provides a massive amount of information to consumers to educate the consumers on the real estate market. This information was not available prior to Zillow. Zillow has made what was an opaque market much more opened up. In this case, plaintiffs seek to limit a popular aspect of the website, which is the Zestimate, which, as the district court below found, is a portmanteau of Zillow and Estimate. It's Zillow's estimate of predicted future home values. As I think the panel was recognizing, it is our position, and the website makes it very plain, that it is not the Zestimate. This estimate of future value is not an official appraisal. It would not qualify as an appraisal under the uniform standards of professional appraisal practice. But for purposes of this case, working on the definition of a Zestimate and an appraisal, especially for the Licensing Act claim, it's immaterial. The district court correctly dismissed the Licensing Act claim on two grounds, both of which are solid. A ground that the court dismissed the real estate claim first was that there was no private right of action. And the Metzger case plainly shows that the courts should only imply a private cause of action where the statute would be ineffective as a practical matter without. And the plaintiffs just have not met their—they have not proven anything. As the district court—I'm sorry, established anything. The district court properly found repeatedly that they had waived this argument. They didn't address it. We addressed it in our opening briefs, which is obviously how the court came to address the standing issue. We analyzed those issues that the court addressed in its opinion. So the court found, as this court knows, that there was a meaningful remedy under the real estate appraiser statute. There's not only a $25,000 fine, there's criminal penalties, and there are many persons appointed by the statute to enforce it. Thus, the district court found that implying a cause of action was not necessary. The statute was effective without implying a cause of action. There are other grounds under the Fisher case analysis of the four factors that further show that a private cause of action should not be implied. The plaintiffs are not members of the class for whom the statute was enacted. The Licensing Act is an outgrowth of FERIA, which was a federal statute in the 80s. It's an outgrowth of what? See, if you don't even know what the letters mean, then it's a serious trouble. But we are not specialists. You're arguing to a bunch of generalists. We really need words, and if you don't know, how do you expect us to know? I apologize, Your Honor. It was an outgrowth of federal legislation in the 1980s after the savings and loan crisis, where there was a mandate in the federal statute for the states to enact licensing for appraisers. So the intended beneficiary of the state licensing statute are financial institutions and not individual homeowners. The statute was designed to address professional certification, not property rights of individuals. Even if there were to be a private right of action under the statute, which there isn't, the statute expressly exempts automated valuation models, and there is no dispute on this record that what a Zestimate is is an automated valuation model that is alleged in the complaint. Well, it's the result of an automated valuation model. The estimate is not itself the model. Correct. It is the results of this proprietary algorithm developed by Zillow. And the district court properly construed the statute, this exemption provision, to find that it would exempt the Zestimate, which is the output of an automated valuation model. So not only is there no private right of action, but the statute expressly exempts the exact item we have here. I would suggest that the allocation of time to your case was overly generous. Yes, Your Honor. Do you agree with me? I do. There's no constitutional mandate that you continue. Whenever you get to the end of it, do. I will then just briefly mention, Your Honor, that the district court also correctly ruled that the plaintiffs had not stated in the Illinois Deceptive Trade Practice Act for the reasons Judge St. Eve stated, that they hadn't met the individual enumerated causes of action and also had not led an alleged future harm. And finally, then, on the Consumer Fraud Act, the district court properly construed that there was no stated cause of action, or concluded there were no deceptive practices alleged, and there also was no consumer nexus. I should maybe drop a footnote just briefly. In the plaintiff's reply brief, they cite to a case that's part of a line of cases that the Seventh Circuit expressly projected the Beard v. Gress, which construed the consumer nexus, or did not require a consumer nexus for a Consumer Fraud Act claim. This court in First Comics v. World Color Press, 844 F. 2nd, 1033, concluded that the Supreme Court of Illinois would require a consumer nexus, otherwise the Consumer Fraud Act would be overly broad. With that, I will conclude and ask that the court affirm the district court's two opinions. Thank you, counsel. Ms. Anderson, you have exactly 12 seconds to go, so if you have a very brief point. Your Honor, I just wanted to say that I don't think that there's been an analysis of the real estate component, and I'd ask that Your Honor look at that again. And I think that the writing is on the wall from what I've heard today. I think that's disappointing, and I'd ask that you look at the briefs again. Thank you very much. Thank you. The case is taken under advisement.